RELATED-DDJ

**FILED**
2/5/2014
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION AT SANTA ANA
BY *Dodjie Lagman*
Deputy Clerk, U.S. District Court



FILED & ENTERED
FEB 04 2014
CLERK U.S. BANKRUPTCY COURT
Central District of California
BY milano   DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT
# CENTRAL DISTRICT OF CALIFORNIA
# LOS ANGELES DIVISION

SACV14-00163 VAP

| | |
|---|---|
| In re: | Case No.: 8:05-bk-50128-TA |
| WILLIAM E PRESTON, | Adversary No.: 8:11-ap-01231-TA |
| | Chapter: 7 |
| Debtor(s), | **PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW REGARDING CAPACITY OF WILLIAM E PRESTON ON THE DATE OF THE FILING OF THE BANKRUPTCY PETITION** |
| R. TODD NEILSON | |
| Plaintiff(s), | Hearing Judge: Hon. Gregg W. Zive |
| | <u>Trial</u>: |
| v. | Date:  October 8, 2013 |
| JOYCE MOORE, THE PRESTON MUSIC GROUP, INC., THE WILLIAM PRESTON TRUST, FREDERICK WILHELMS III | October 9, 2013<br>November 19, 2013<br>Time:  9:00 a.m.<br>Ctrm:  1445 |
| Defendant(s). | |

R. Todd Neilson ("Neilson"), the Chapter 7 Trustee for the bankruptcy estate of William E Preston ("Debtor") filed a complaint for declaratory and injunctive relief against

1

Case 8:14-cv-00163-VAP Document 2 Filed 04/02/14 Page 2 of 17 Page ID #:8
Case 8:14-cv-00163-VAP Document 2 Filed 04/02/14 Page 2 of 17 Page ID #:8 Desc
Main Document    Page 2 of 17

defendants The William Preston Trust (the "Trust"), Frederick Wilhelms, III in his capacity as trustee of The William Preston Trust, Joyce Moore ("Moore") and The Preston Music Group, Inc. on May 20, 2011. Answers were filed by the Trust on October 28, 2011, and by Moore on January 31, 2013. The Preston Music Group filed its answer on February 4, 2013. The complaint seeks a judgment declaring that Debtor was not incapacitated at the time of the filing of the bankruptcy petition, that the Trust remained revocable and that the assets currently held by Neilson and any other assets of Debtor are assets of the bankruptcy estate. Pursuant to order entered January 30, 2013, Phase One of the trial in this adversary proceeding was limited to Neilson's first claim for relief – whether Debtor was "incapacitated" so as to render the William Preston Trust irrevocable. Trial in this adversary was assigned to the Hon. Gregg W. Zive by order entered February 19, 2013 and the trial was held on October 8 and 9 and November 19, 2013. The matter was taken under submission and these proposed findings of fact and conclusions of law have been prepared for submission to the District Court for entry of a final judgment pursuant to 28 U.S.C. § 157(c)(1) in compliance with the orders entered October 12, 2011 finding that the Court has "related to" jurisdiction over these non-core issues.

## I.    PLEADINGS

In preparation for trial, the Court reviewed the following pleadings:

- *Notice of Filing of Documents Pursuant to Court Scheduling Order* filed September 9, 2013 [Docket No. 196];
- *Plaintiff's Identification of Witnesses to Testify at Trial* filed September 9, 2013 [Docket No. 194];
- *Plaintiff's Trial Brief* filed September 9, 2013 [Docket No. 193];
- *Trial Brief* filed by the Trust on September 9, 2013 [Docket No. 197];
- *Trustee's Complaint for: (1) Declaratory Relief against Defendants; (2) Injunctive Relief* filed May 20, 2011 [Docket No. 1];
- *Answer to Trustee's Complaint for (1) Declaratory Relief (2) Injunctive Relief* filed by the Trust on October 28, 2011 [Docket No. 30];

2

- *Defendant Preston Music Group, Inc. Answer to Adversary Complaint* filed February 4, 2013 [Docket No. 142];
- *Defendant Joyce Moore Answer to Adversary Complaint* filed January 31, 2013 [Docket No. 136];
- *Joint Pre-Trial Order for Phase One* entered June 21, 2013 [Docket No. 176];
- *Scheduling Order Re: Pre-Trial Conference* entered June 21, 2013 [Docket No. 177];
- *Statement of Decision Construing Dismissal Motion as One for Amendment Under FRBP 1009, Granting Motion as to William E. Preston Trust and Denying Motion to Dismiss as to Individual Debtor, William E. Preston* entered October 31, 2010 [8:05-bk-50128-TA, Docket No. 438];
- *[Amended] Order Denying Motion of Defendants Joyce Moore and Preston Music Group, Inc. to Dismiss Plaintiff's Complaint* entered October 12, 2011 [Docket No. 27];
- *Order Denying Motion of Defendant The William Preston Trust by and Through its Trustee, Frederick Wilhelms, III to Dismiss Adversary Proceeding Pursuant to Fed. R. Civ. Pro 12(b)(1) & (2) BK Rule 7012(B)* entered October 12, 2011 [Docket No. 28];
- *Declaration of Scott Lee Re: Minute Order of the Honorable Virginia A. Phillips, U.S. District Judge, Denying Motion to Withdraw Reference (Doc. No. 1), Denying Motion to Consolidate (Doc. No. 6) as Moot, and Vacating January 9, 2011 [sic] Hearing (in Chambers) Entered on December 8, 2011* filed December 9, 2011 [Docket No. 35];
- *Order Denying Joyce Moore's Motion to Certify Appeal of Interlocutory Order Denying Motion to Dismiss Adversary Complaint Pursuant to* Stern v. Marshall *to the United States Court of Appeals for the Ninth Circuit* entered December 12, 2011 [Docket No. 36];
- *Order Denying: (A) Trustee's Motion for Summary Judgment on the First Cause of Action (on the Capacity of William Everett Preston Prior to and as of the Filing of*

3

*the Bankruptcy Petition and the Revocability of the William Preston Trust); (B) Defendants' Motion for Summary Judgment on Plaintiff's First Caused [sic] of Action; and (C) Defendants Joyce Moore and Preston Music Group, Inc. [sic] Motion for Summary Judgment on Plaintiff's Second Cause of Action* entered January 4, 2013 [Docket No. 120] and pleadings related thereto;

- *Order Setting Trial Date in Adv. No 8:11-01231-TA, Establishing Deadline for Filing of Withdrawal of Reference Motions and Assigning Related Adversary Proceedings to Judge Philip H. Brandt for Further Scheduling and Trials* entered January 11, 2013 [Docket No. 125];

- *Order Reassigning Adversary Proceeding to Judge Gregg W. Zive* entered February 19, 2013 [Docket No. 149];

- *Scheduling Order* entered March 5, 2013 [Docket No. 154];

- *Order Determining Choice of Law* entered June 14, 2013 [Docket No. 173];

- *Notice/Request to Withdraw Pretrial Motion for Entry of Judgment for Defendant in Adversary Proceeding* filed July 12, 2013 [Docket No. 183];

- *Order Denying Motion for Stay Pending Decision by United States Supreme Court* entered July 24, 2013 [Docket No. 187];

- *Order Granting Request to Set Trial Order* entered September 16, 2013 [Docket No. 208];

- *Order Granting Motion in Limine to Exclude Declarations or Affidavits of Valerie Ervin, Joyce Moore, Ollie Ervin, David Spero, Otto D'Angelo, Dr. Robert Waldman, Dr. Lee Ann Kelley, and Dr. Vincent Cariatti as Hearsay* entered October 1, 2013 [Docket No. 221] and pleadings related thereto;

- *Order Granting Motion in Limine to Exclude Testimony of Joyce Moore and Robert P. Waldman, M.D. as Hearsay* entered October 1, 2013 [Docket No. 222] and pleadings related thereto;

- *Order Granting Plaintiff's Motion in Limine to Exclude Expert Opinions of Defendants' Expert Witnesses* entered October 1, 2013 [Docket No. 223] and pleadings related thereto;

4

- *Testimony Declaration of Lee Ann Kelley MD* filed October 8, 2013 [Docket No. 227];
- *Testimony Declaration of Joyce Moore* filed October 8, 2013 [Docket No. 228];
- *Testimony Declaration of Otto D'Agnolo* filed October 9, 2013 [Docket No. 229];
- *Testimony Declaration of Roger Friedman* filed October 9, 2013 [Docket No. 230]; and
- *Testimony Declaration of Ollie Ruben Ervin* filed October 9, 2013 [Docket No. 231].[1]

The Court has considered and taken judicial notice of the entire docket in this adversary proceeding and in the bankruptcy case (8:05-bk-50128-TA). *See* Fed. Rules of Evid. 201.

## II. Findings of Fact

1. Debtor filed a voluntary chapter 11 petition on October 21, 2005. Neilson was appointed Chapter 11 Trustee on January 20, 2006. [2:05-bk-50015-VK, Docket No. 17] The case was converted to chapter 7 on July 17, 2006. [8:05-bk-50128-TA, Docket No. 6] Neilson continued as the Chapter 7 Trustee.

2. Five of the signatures on Debtor's bankruptcy petition were found to be authentic signatures, probably made on or about October 10, 2005. [8:05-bk-50128-TA, Docket No. 438, p. 7, lines 20-23]

---

[1] This declaration was not considered because Mr. Ervin did not appear at trial. At the conclusion of testimony on October 9, 2013 and after discussions regarding the efforts made to secure Mr. Ervin's appearance, the Court granted the Trust a continuance to November 19, 2013. [Oct. 9, 2013 Transcript, p. 209-224] The Court stated at that time that Mr. Ervin's declaration would not be accepted if he did not appear. [*Id*. at p. 217, lines 22-23] At the beginning of trial on November 19, 2013, the Court was informed that Mr. Ervin had been subpoenaed and had failed to appear. [Nov. 19, 2013 Transcript, p. 4-5] The Court issued an order to show cause against Mr. Ervin instructing him to appear in the afternoon on November 19, 2013. [*Id*. at p. 8, lines 11-16] During the afternoon hearing on November 19, 2013, the Trust's counsel informed the Court that her private investigator had not been truthful on his proof of service. [*Id*. at p. 11, lines 4-6] Pursuant to order entered June 21, 2013, all direct testimony in this trial was to be by declaration and witnesses whose declarations were offered were to be present for cross-examination. [Scheduling Order Re: Pre-Trial Conference, Docket No. 177]

Case 8:14-cv-01163-VAP Document 21 Filed 02/05/14 Page 6 of 17 Page ID #:7
Case 8:14-cv-01163-VAP Document 9 Filed 02/05/14 Page 6 of 17 Page ID #:7
Main Document      Page 6 of 17

3. Debtor authorized the filing of his bankruptcy case. [8:05-bk-50128-TA, Docket No. 438, p. 10, lines 16-19]

4. Debtor fell into a coma on November 21, 2005 and remained in that state until his death on June 6, 2006. [Oct. 8, 2013 Transcript, p. 42, lines 4-11]

5. Debtor ceased being the trustee of the trust when he resigned in favor of Mr. Wilhelms in late September or October 2004. [Oct. 9 Transcript, p. 144, lines 2-5] Moore and Valerie Ervin were named co-successor trustees but later resigned. [*Id.* at p. 145, lines 1-8] Moore resigned in favor of Teri Wilhelms and Ms. Ervin resigned in favor of Heather Sauber. [*Id.* at lines 9-16] When Mr. Wilhelms passed away, Ms. Wilhelms and Ms. Sauber became the trustees. [*Id.* at p. 146, lines 5-14]

6. Moore was Debtor's personal manager intermittently from 2001 through his death. [Oct. 8, 2013, p. 214-215, lines 13-25, 1-13] She describes herself as "often his schlepp and driver" and his "family." [Oct. 9, 2013 Transcript, p. 161, lines 20-23] Debtor did not have a business manager in the fall of 2005. [*Id.* at p. 163, lines 17-19]

7. As of October 2004, Moore held a medical power of attorney for Debtor. [Oct. 8, 2013 Transcript, p. 212, lines 13-20] Moore was very aware of Debtor's medical condition during the time she held the medical power of attorney. [*Id.*]

8. Moore coordinated Debtor's care with Dr. Lee Ann Kelley, M.D. [Plaintiff's Exh. 67, p. 96; Oct. 8, 2013 Transcript, p. 102, lines 11-20] They discussed his dialysis and made alterations to his medications. [*Id.*] Moore and Dr. Kelley spoke on the telephone frequently about Debtor's care. [*Id.*]

9. Ollie Ervin worked as a personal assistant to Debtor. He traveled with Debtor and helped with tasks such as packing bags. [Oct. 9 Transcript, p. 21, lines 4-6]

10. Debtor's sister, Rodena Preston, filed conservatorship actions in Arizona and California in January 2006 and March 2006. [*Id.*, p. 91-92, lines 24-25, 1-3] One of the purposes of Debtor's bankruptcy filing was to protect Debtor's assets from Debtor's sister. [*Id.* at p. 92 lines 4-7] As detailed below, declarations of Dr. Lee

Case 8:14-cv-01161-AP Document 2 Filed 04/02/14 Page 74 of 170 Page ID #:8
Case 8:14-cv-01163-VAP Document 2 Filed 04/02/14 Page 74 of 170 Page ID #:8
Main Document    Page 7 of 17

Ann Kelley, M.D. were filed in the Arizona and California conservatorship actions. Those declarations are contrary to Dr. Kelley's trial declaration and are predicate to the finding that that her trial declaration and testimony are not persuasive.

11. Debtor was under the psychiatric care of Dr. Kelley beginning in September 2004. [Trial Decl. of Lee Ann Kelley, M.D. ¶ 13] Debtor received treatment for anxiety, situational panic disorder and related claustrophobia relating to Debtor's dialysis treatment and inability to deal with sitting in an airplane. [*Id.* at ¶ 16] Debtor was prescribed medication for his dialysis sessions, as well as for generalized depression and difficulty sleeping. [*Id.* at ¶ 18; see also Oct. 8, 2013 Transcript, p. 156-157]

12. Debtor was addicted to crack cocaine. [Oct. 8, 2013 Transcript, p. 211, lines 15-23; Oct. 9 Transcript, p. 22, lines 10-16, p. 177, lines 16-24, p. 178, lines 1-2; Trial Decl. of Roger Friedman ¶¶ 23, 24] Debtor acknowledged this to Dr. Kelley in September and October 2004. [Trial Decl. of Lee Ann Kelley, M.D., ¶ 20]

13. There were periods of time when Debtor was able to remain sober, but Debtor was using drugs beginning in February 2005. [Trial Decl. of Lee Ann Kelley, M.D. at ¶¶ 22, 23, 24]

14. According to one account, Debtor was "stoned most of the time." [Oct. 9, 2013 Transcript at p. 186, lines 7-13]

15. Debtor's depression had increased in late February 2005 and he increased the dosage of medication before dialysis. [Trial Decl. of Lee Ann Kelley, M.D. at ¶¶ 29-30]

16. Debtor was admitted to the Mayo Hospital on September 4, 2005 with an infection. He had been using cocaine. [*Id.* at ¶ 33]

17. Moore knew that in September 2005, Debtor's nephrologist threatened to stop dialysis because of Debtor's bingeing. [Oct. 8, 2013 Transcript, p. 227, lines 11-25] Moore also knew that Debtor's other doctors also pleaded with Debtor to stop his drug use. [Oct. 8, 2013 Transcript, p. 228, lines 1-5]

18. As of October 23, 2005, Moore knew that Debtor had a history of cocaine abuse. [Oct. 9 Transcript at p. 237, lines 6-8]

19. Until October 23, 2005, Moore was not concerned that Debtor was dependent on cocaine. [Oct. 8, 2013 Transcript, p. 223, lines 9-11]

20. Debtor was in the Bahamas, at the Atlantis, from October 15 to 17, 2005 to celebrate Sam Moore's birthday. [Trial Decl. of Roger Friedman ¶ 12] During that time, there were suspicions that Debtor was trying to get drugs. [Oct. 9, 2013 Transcript at p. 176, lines 1-7]. On this trip, Debtor was coherent, cogent and charming. [Trial Decl. of Roger Friedman ¶12]

21. Debtor traveled to Los Angeles with Moore, Sam Moore and Ollie Ervin on October 18, 2005. [Oct. 9 Transcript, p. 147, lines 19-25]

22. Debtor was fine on the airplane and at rehearsal on October 18, 2005. [*Id*. at p. 148, lines 3-16]

23. Debtor had dialysis the morning of October 19, 2005. [Oct. 9 Transcript, p. 196, lines 16-18] At times Debtor was sleepy after dialysis. [*Id*. at p. 197, lines 8-11]

24. Debtor attended a recording session on the morning of October 19, 2005. [Oct. 9 Transcript, p. 195, lines 8-12] In video taken of the recording session, there was mutual satisfaction about the performance. [Plaintiff's Exh. 235; Oct. 9, 2013 Transcript, p. 208, lines 6-8] Debtor did not appear gruff and none of the performers with Debtor indicated any discomfort or unhappiness with his performance. [Oct. 9 Transcript, p. 208, lines 10-11, 21-24] Debtor did not appear withdrawn, although based on descriptions perhaps he could be more outgoing at other times. Debtor did not appear "happy-go lucky" in the video. [*Id*. at p. 208-209, lines 24-25, 1-4]

25. In the video of the October 19, 2005 recording session, Debtor communicated with the other artists, played the organ, posed for photographs and got up to leave with everyone else. [Plaintiff's Exh. 235]

8

26. On the evening of October 19, 2005, Debtor attended the Concert for Bangladesh DVD release party. Debtor was photographed and performed three songs at the event. [Oct. 9 Transcript, p. 196, lines 4-6]

27. Both Moore and Valerie Ervin believe they saw Debtor's drug dealer or his car at Debtor's hotel on October 19, 2005. [Oct. 9 Transcript at p. 66, lines 9-17; p. 237-238, lines 24-25, 1]

28. Accounts of Debtor's mood at the Concert for Bangladesh event on October 19 vary from "gruff and moody" [*Id*. at p. 149, lines 2-7] to normal and in good spirits. [*Id*. at p. 15, lines 19-21; p. 18, lines 10-23]

29. Debtor shopped for a new coat at Macy's with Valerie and Ollie Ervin on the way to the Concert for Bangladesh event. [*Id*. at p. 14 lines 20-23]

30. Opinions on whether Debtor was high at the Concert for Bangladesh event on October 19 also vary. Moore and Valerie Ervin did not believe Debtor was high. Based on his impressions from a photograph, Roger Friedman did. [Oct. 8, 2013 Transcript at p. 206-207, lines 24-25, 1-4; p. 237 lines 9-17; Oct. 9 Transcript at p. 18-19, lines 24-25, 1-4; p. 160, lines 13-18; p. 186, lines 7-13]

31. Debtor was to travel with Moore to Cleveland on October 20, 2005 for a Rock and Roll Hall of Fame event, but did not go because he did not feel well. Debtor returned to Arizona with Ollie Ervin instead. [Oct. 8 Transcript, p. 209, lines 8-13; Oct. 9 Transcript, p. 151-152, lines 11-25, 1-3; p. 153, lines 3-9; 20-25]

32. Debtor had a dialysis appointment scheduled for October 21, 2005, but at Debtor's request, Moore rescheduled the appointment for approximately 5:00 a.m. on October 22, 2005. [Oct. 8 Transcript, p. 209, lines 8-17; Oct. 9, Transcript, p. 154, lines 3-19]

33. When Moore spoke with Debtor on October 21, 2005, he was abrupt and demanding, which was unusual. [Oct. 9 Transcript, p. 154, lines 20-24] Debtor was ecstatic when Moore was able to get him a dialysis appointment at 5:00 a.m. on October 22, 2005. [*Id*. at p. 155, lines 19-25]

34. Moore picked Debtor up at 4:30 a.m. on the morning of October 22, 2005 to take him to his 5:00 a.m. dialysis appointment. Debtor was more awake than usual, but Moore was not concerned. [Oct. 8 Transcript, p. 209, lines 14-17; Oct. 9 Transcript, p. 156, lines 8-16]
35. Moore returned to the dialysis center two hours later when she was informed that Debtor had a seizure. [Oct. 8 Transcript, p. 209, lines 19-21; Oct. 9 Transcript, p. 158, lines1-10]
36. When Moore arrived at the dialysis center, Debtor was swollen and incoherent. He was jumping and flailing around. [Oct. 9 Transcript, p. 158-159, lines 18-25, 1-4]
37. Moore asked that the paramedics be called and followed the ambulance to the hospital. [*Id*. at p. 159, lines 12-17]
38. The morning of October 22, 2005 was the first time Moore suspected that Debtor had been using crack cocaine. [Oct. 8 Transcript, p. 209, lines 19-25; Oct. 9 Transcript, p. 208-209, lines 25, 1-4]
39. Upon arrival at the hospital on October 22, 2005, Debtor was not capable of answering questions, so Moore and Ollie Ervin provided a history to the doctors. [Oct. 9 Transcript, p. 232, lines 12-16, p. 236, lines 2-6; Plaintiff's Exh. 42, p. 109, 117, 119]
40. When Dr. Kelley saw Debtor on October 23, 2005, more than 30 hours after his admission to the hospital, Debtor was restless and had decreased eye contact. Debtor was depressed and had impaired judgment due to drug use. [Trial Decl. of Lee Ann Kelley ¶¶ 37, 39]
41. Dr. Kelley's discussions on October 23, 2005 were with Debtor, not Moore. [Oct. 8, 2013 Transcript, p. 71, lines 14-18] During this visit, Dr. Kelley convinced Debtor to seek drug treatment. [*Id*., p. 71-72, lines 18-25, 1-10] If Debtor had lacked capacity, these conversations would have been with Moore, Debtor's medical power of attorney.
42. Dr. Kelley diagnosed Debtor as dependent on cocaine. [Trial Decl. of Lee Ann Kelley ¶ 41]

10

43. Debtor was ill on multiple levels and was sicker on October 23, 2005 than usual. [Oct. 8, 2013 Transcript, p. 185, lines 16-21]
44. Debtor was able to provide his medical history to Dr. Kwan Lee during a visit on November 4, 2005. [Plaintiff's Exh. 42, p. 132]
45. The declaration of Dr. Kelley was filed in support of a Motion for Order Vacating Appointment of Temporary Conservator and Opposition to Petition to Appoint Permanent Conservator filed March 8, 2006 in Los Angeles Superior Court by Samuel and Joyce Moore. [Trial Decl. of Lee Ann Kelley, M.D., Exh. 5; Plaintiff's Exh. 50, p. 40] In that declaration, Dr. Kelley stated:
   > …it is my opinion that Mr. Preston functioned at a very high level as a person, and professionally as a musician until his tragic event in late November 2005…He was also capable of understanding that his previous behavior had resulted in adverse consequences in his life and career. As this is incompatible with any allegation that he might be cognitively impaired to the degree of being able to manage his own affairs, *Mr. Preston was clearly competent in managing his affairs and making decisions*… (emphasis added)

   [*Id.*, p. 40-42, ¶ 6] The same declaration was filed in support of an Opposition to the Petition for Emergency Appointment of Temporary Guardian of an Adult in Arizona Superior Court in May, 2006. [Plaintiff's Exhibit 66, p. 13, ¶ 6] Dr. Kelley's two 2006 declarations are also consistent with her interaction with Debtor on October 23, 2005 and are indisputably inconsistent with her 2013 declaration.
46. On April 18, 2006, Moore provided two versions of a declaration by Dr. Kelley, signed on April 17, 2006, to the Trustee's counsel by fax. In both versions of the declaration, Dr. Kelley stated:
   > …it is my opinion that Debtor functioned at a very high level as a person…until his tragic medical event in late November of 2005. In short, I believe the Debtor may have been behaviorally impaired (i.e., he was unable to focus and be attentive for an extended period of time) *but was not cognitively impaired (i.e.*

11

        *he was able to make rational decisions) between September of 2005 through October 21, 2005* (emphasis added)

[Plaintiff's Exh. 49, p. 2, ¶ 5] This declaration was filed with the Bankruptcy Court as Docket Number 36 on April 20, 2006 in support of the Trustee's request to waive the pre-petition credit counseling requirement. [Plaintiff's Exh. 8, p. 1] Moore and Dr. Kelley worked together to provide this information because they wanted the bankruptcy case to continue.

47. In her trial testimony declaration filed September 9, 2013, and in Exhibits 2 and 4 to that declaration, dated August and July 2012, respectively, Dr. Kelley changed her testimony to state that Debtor was not competent at least from the evening of October 19, 2005. [Trial Decl. of Lee Ann Kelley, M.D., ¶ 53; Exh. 2, ¶ 26; Exh. 4, p. 67]

48. Dr. Kelley's subsequent diagnosis that Debtor was mentally incompetent on October 19, 2005 due to crack cocaine use [Trial Decl. of Lee Ann Kelley ¶ 42] was allegedly based on her review of records in 2013 that she asserted she did not have when she signed her 2006 declarations in which she testified Debtor was competent [Oct. 8, 2013 Transcript, p. 141-142, lines 21-25, 1-16] and on Ollie Ervin's declaration[2]. [Oct. 8, 2013 Transcript, p. 169, lines 7-20]  However, as a treating physician, Dr. Kelley admitted she could have easily obtained those records in 2006 before she signed the two declarations. [Oct. 8, 2013 Transcript, p. 168, lines 5-24] The Court finds Dr. Kelley's 2013 declaration not to be persuasive.

49. In Moore's declaration, which was dated and filed with the Bankruptcy Court as Docket Number 36 on April 18, 2006 in support of the Trustee's request to waive the pre-petition credit counseling requirement, Moore stated that she believed "Debtor was absolutely at all times herein rational and able to evaluate his financial situation." [Plaintiff's Exh. 1, p. 4, ¶ 19; Plaintiff's Exh. 83; Oct. 9, 2013

---

[2] This declaration is hearsay, was not admitted and was not subject to cross examination.

12

Transcript, p. 129, lines 11-15] Moore acknowledges signing this declaration. [Oct. 9, 2013 Transcript, p. 114 lines, 7-14] This declaration was faxed to the Trustee's counsel by the Law Offices of Cara Blake on April 18, 2006. [Plaintiff's Exh. 47] The Court finds Moore's trial declaration and testimony seven years later not to be credible.

50. There is no evidence of any threats on the part of the Trustee or his counsel in connection with the preparation of the declaration supporting the waiver of pre-petition credit counseling. Trustee's counsel stated that the declarations needed to be truthful and accurate, which is not threatening. [Plaintiff's Exh. 60]

### III. Conclusions of Law

1. The "Declaration of Trust Named The William Preston Trust" and the "Abstract of The William Preston Trust" provide, at §5(c):

   > Incapacity: If the settlor becomes incapacitated, no person including his or her legal guardian, conservator, court appointed conservator, or one holding his or her Durable Power of Attorney shall have any power or authority to revoke or amend this trust.

   [Plaintiff's Trial Brief, Exh. 14 p. 173; 192]

2. The Durable Power of Attorney of William Everett Preston provides:

   > Principal shall be deemed to be incapacitated if at any time two (2) licensed physicians certify in writing that Principal has become physically and mentally incapacitated and is unable to manage his/her affairs in his/her best interest, whether or not a court of competent jurisdiction has declared Principal incompetent, mentally ill or in need of a conservator/guardian.

   [Plaintiff's Trial Brief, Exh. 14 p. 225]

3. California law is to be applied to determine whether Debtor was incapacitated, as defined by the Trust's governing documents, on the date the bankruptcy petition was filed. [*Order Determining Choice of Law,* Docket No. 173]

4. Cal. Probate Code § 810(a) provides that there is a "rebuttable presumption affecting the burden of proof that all persons have the capacity to make decisions and to be responsible for their acts or decisions."
5. The burden is on the contesting party to overcome the presumption of capacity. *Estate of Mann*, 184 Cal.App.3d 593, 602, 229 Cal.Rptr. 225 (1986).
6. Cal. Probate Code § 810(b) provides that a "person who has a mental or physical disorder may still be capable of contracting, conveying, marrying, making medical decisions, executing wills or trusts, and performing other actions."
7. Cal. Probate Code § 811 provides that a determination that a person lacks capacity must be supported by evidence of a deficit in certain enumerated mental functions, and evidence of a correlation between the deficit/deficits and the decision or acts in question. Section 811(b) provides that a deficit in the enumerated mental functions may only be considered if it, by itself or in combination with one or more mental function deficits, "significantly impairs the person's ability to understand and appreciate the consequences of his or her actions with regard to the type of act or decision in question."
8. Pursuant to Cal. Probate Code § 812, a person lacks capacity to make a decision unless the person has the ability to communicate verbally, or by other means, the decision, and to understand and appreciate, to the extent relevant, all of the below:
   > (a) The rights, duties, and responsibilities created by, or affected by the decision.
   > (b) The probable consequences for the decision maker and, where appropriate, the persons affected by the decision.
   > (c) The significant risks, benefits, and reasonable alternatives involved in the decision.
9. Evidence of mental condition both before and after the execution of an instrument is relevant and admissible to the determine soundness of mind at the time of execution of a will. *In the Matter of Harry C. Fisher*, 202 Cal. 205, 208 (1927). In

the absence of evidence that "intemperate use of alcoholic beverages" has destroyed testamentary capacity, there is no presumption that it has been destroyed, even if it is shown that there is a continuing habit. *Id.* at 209.

10. The fact that Debtor was addicted to crack cocaine did not incapacitate him unless he had no intelligent comprehension of what he was doing. *See In the Matter of George A. Little*, 46 Cal.App. 776, 789 (1920).

11. A testator's intoxication, assuming it is established on the day of the execution of the will, must have been such that it deprived him of judgment while executing it. "It must affirmatively appear that the mind of the testator was totally destroyed, … that he was incapable of comprehending the nature of his act, the extent of his property and those who had a claim upon his bounty." *In the Matter of the Estate of Frank Smethurst*, 15 Cal.App.2d 322, 331-332 (1936).

12. The Trust has not met its burden under section 810. It has demonstrated that Debtor was a drug addict. The Trust has not established that Debtor had a deficit in mental function that impaired his ability to understand the decision to file a bankruptcy petition, as required under section 811. On October 19, 2005, Debtor participated in a rehearsal session and attended a public event where he had conversations with multiple people. On October 20, 2005, Debtor was able to ask Moore to make the arrangements for him to travel back to Arizona, rather than to Cleveland. On October 21, 2005, the petition date, Debtor was lucid enough to call Moore and ask her to reschedule his dialysis appointment. Moore did not question these requests. It was not until October 22, 2005, the day after the petition was filed, that Debtor had a seizure during dialysis that resulted in his admission to the hospital. By October 23, 2005, Debtor was communicating with Dr. Kelley. By October 23, 2005 Debtor was signing releases of information and communicating with his physicians.

13. The petition documents had been prepared and signed days before the petition was filed. There has already been a finding that Debtor intended to file his bankruptcy petition. The Trust has not established that Debtor was not able to

15

comprehend his actions during the time the petition documents were prepared. To the contrary, it appears Debtor was actively working and participating in social engagements up until the petition date.

14. A party cannot create an issue of fact by providing a declaration that contradicts her prior testimony. *Kennedy v. Allied Mutual Insurance Co.*, 952 F.2d 262, 266 (9th Cir. 1991); *Radobenko v. Automated Equipment Corp.*, 520 F.2d 540, 544 (9th Cir. 1975) (sham issues should not subject a defendant to the burden of trial).

15. Moore and Dr. Kelley both signed declarations in 2006 stating that Debtor was "not cognitively impaired" and "rational." Their story changed once the Trustee began to pursue Moore. Dr. Kelley could have had access to the Mayo medical records when she prepared her April 2006 declaration.

16. Dr. Kelley would not have discussed entering rehab with Debtor on October 23, 2005 if he was incapacitated. She would have discussed it with Moore, Debtor's medical power of attorney, who regularly attended Debtor's doctor appointments and communicated with Debtor's doctors. Dr. Kelley and Moore had a history of working together and communicating with each other with respect to Debtor's medical care. By November 4, 2005, Debtor was able to provide his own medical history to doctors.

\\
\\
\\

16

17. Moore was very familiar with Debtor, his medical conditions and drug use. She had been his medical power of attorney since October 2004. Moore knew that Debtor's doctors had encouraged him to stop his drug use. If Moore believed that Debtor was incapacitated, she would not have contested the conservatorship proceedings in California and Arizona because Debtor would have needed some form of protection.
18. The later assertions of Debtor's incapacity by Moore and Dr. Kelley should be disregarded in favor of their earlier declarations.
19. The Trust has failed to meet its burden and has failed to overcome the rebuttable presumption of capacity. Debtor was not incapacitated on the petition date, October 21, 2005.

###

Date: February 4, 2014

Gregg W. Zive
United States Bankruptcy Judge

17